**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| WESLEY NEWMAN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>                  Plaintiff<br><br>vs.<br><br>ELITE AGENCY LLC<br>D/B/A TOTAL HEALTH<br><br>              Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Wesley Newman (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

<u>**Preliminary Statement**</u>

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Plaintiff Wesley Newman ("Plaintiff") brings this action under the TCPA alleging that Defendant Elite Agency LLC d/b/a Total Health ("Defendant") called the Plaintiff, whose number is on the National Do Not Call Registry, including some calls which utilized highly illegal prerecorded messages. Those calls were made without the call recipient's prior express written consent.

6. Newman also alleges that Defendant used automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act ("FTSA"), Fla. Sta § 501.059.

7. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

8. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

9. Plaintiff Wesley Newman is a natural person.

10. Defendant Elite Agency LLC is a Florida Limited Liability Company with its principal place of business in Deerfield Beach, Florida. Defendant sells various sorts of health insurance products, including Medicare supplemental insurance.

**Jurisdiction & Venue**

11.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

12.     This Court has general personal jurisdiction over Defendant because it is a Florida Limited Liability Company with its principal place of business in Broward County, Florida.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this state and judicial district.

**CLAIM BACKGROUND**

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

15.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**The TCPA Prohibits Prerecorded Calls to Cell Phones**

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

20.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

21.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

22.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See*

*Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

23.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

24.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

25.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

**The Florida Telephone Solicitations Act**

26.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

27.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

28.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

29.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

30.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

31.     Defendant Elite Agency LLC d/b/a Total Health is a seller of various insurance products, including Medicare supplemental insurance.

32.     To generate business, Total Health places illegal telemarketing calls to numbers on the National Do Not Call Registry, including using highly illegal prerecorded messages.

33.     Mr. Newman's cellular telephone number, (940) XXX-XXX, is a non-commercial telephone number.

34.     The number is a residential telephone line because it is assigned to a residential cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

35.     Mr. Newman uses the number for personal, residential, and household purposes.

36.     Mr. Newman's telephone number has been listed on the National Do Not Call Registry for years prior to the calls at issue.

37.     Plaintiff has never been a customer of Total Health, never did business with Total Health, nor asked or inquired to be a customer of Total Health.

38.     Plaintiff never consented to receive calls or text messages from Total Health.

39.     Plaintiff never invited calls or text messages from Total Health.

40.     Despite that, starting on November 30, 2024, and continuing through present, the Plaintiff received at least eight (8) calls from the Defendant from various caller IDs, including "spoofed" or non-existent numbers, including 940-458-7216, 940-325-7924, 940-464-1134, 940-644-5943, 940-549-6388, 940-648-9113, 940-536-1407, and 940-387-7354.

41.     The calls all played the same substantially similar message.

42.     First, when the Plaintiff answered, he would hear a "bloop" sound, then the same artificial office background noise.

43.     A voice that was obviously prerecorded would then come onto the line.

44.     That same voice, which is in reality is an AI voice or Mechanical Turk, would say, "Hey, [good morning/afternoon] [random female name] here. The state has just released a new subsidy which you can now qualify for."

45.     The robot would then ask the same questions and then state that the Plaintiff qualified for "essential benefits," and the robot then transferred the Plaintiff to a human.

46.     During this wait, the call played hold music, and then a human being would come onto the line.

47.     The Plaintiff was getting fed up, so he told the callers to stop calling. However, the human beings with whom Plaintiff spoke, as well as the robots, simply hung up on him.

48.     But the calls continued.

49.     Specifically, on December 5, 2024, during a call from the caller ID number 940-644-5943, the Plaintiff was connected to a human named "Omar," who began to state that he would help the Plaintiff get additional Medicare health benefits and then said, "[it] seems like . . . uhhh, you have a good day."

50.     Presumably, Omar was about to state that the Plaintiff was on or supposed to be on the Defendant's internal do not call list.

51.     Despite that fact, and despite the fact that the Plaintiff had asked for the calls to stop, the Plaintiff got another call from the same robot the same day from the caller ID number 940-549-6388, and was transferred to "Aidan" with "Total Health."

52.     When Plaintiff asked "Aidan" for his license number, "Aidan" provided the license number 20975461. The Plaintiff then hung up.

53.     Public records reveal that the NPN (National Producer Number) 20975461 is associated with Aidan DeAbreu.

54.     Furthermore, those records also indicate that Mr. DeAbreu's email address is adeabreu@eliteagencyins.com, which is an email address at the Defendant's website.

55.     Aidan DeAbreu is the Defendant's employee or agent.

56.     Immediately thereafter, the Plaintiff received a call from the legitimate caller ID number 561-728-1184. It was Aidan DeAbreu again.

57.     When that number is called back, it also leads to the Defendant.

58.     Specifically, the Plaintiff called this number back and was initially told that the company name was "Total Health," but during that same call, the agent fessed up and stated that the actual legal name of the company was Defendant Elite Agency and provided Elite's website.

59.     Thus, the Plaintiff has established that the Defendant uses the fictious alias, "Total Health," in placing the illegal calls at issue, presumably to avoid bad will for its brand.

60.     On December 6, 2024, the Plaintiff emailed Mr. DeAbreu as well as other c-suite individuals at Defendant's company, as well as the Defendant's general email address asking for the Defendant to stop calling the Plaintiff.

61.     The Plaintiff received no response.

62.     Thereafter, on December 6, 2024, as well as twice on December 9, 2024, the Plaintiff received calls from the Defendant with the same prerecorded robot.

63.     During the call on December 6, 2024 from the caller ID number 940-648-9113, the Plaintiff was transferred to another employee of the Defendant, who stated, "Sir, just a . . . oh my God, blacklist, blacklist . . . " and hung up on the Plaintiff while saying "blacklist."

64.     It is obvious that the Defendant's internal do not call list does not extend to the robots it has initially placing the calls and only is actionable at such point as a human being enters the call and then reviews their screen or CRM.

65.     This is functionally and fundamentally useless as an internal do not call list because it does not prevent the initiation of the calls in the first place. All it is designed to do is to prevent individuals like the Plaintiff from ascertaining the identity of the callers placing illegal calls to them.

66.     The Plaintiff sent several follow up emails to various individuals of Defendant, which went unresponded.

67.     The Plaintiff never provided his consent to receive any of the aforementioned calls from the Defendant.

68.     In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from Defendant, but the calls continued.

69.     The calls were all placed to sell the Defendant's goods and services, including Medicare supplemental insurance.

70.     The aforementioned calls, except for the singular callback from Mr. DeAbreu, were all placed using and beginning with artificial, prerecorded voices because: (a) the various voices sounded as if they were scripted and recorded in advance with a professional voice actor, (b) the voices delivered identical messages but different, as if they were a computer text-to-speech program, (c) the voices had different "names" but all sounded the same, (d) it would be illogical for a human to call someone in such a manner and then ask them to wait to be transferred to a human, and, (e) the Plaintiff was in every instance of transfer connected to Total Health employees who were obviously human.

71.     These combined facts give rise to the plausible inference that an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA was used to place the calls at issue.

72.     For the avoidance of any doubt, the calls were placed using artificial or pre-recorded voices and messages.

73.     The aforementioned calls to the Plaintiff were unwanted.

74.     The calls were nonconsensual encounters.

75.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

76.     Plaintiff never provided his consent or requested the calls.

11

77.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because their phone lines were tied up, their do not call requests were dishonored, they were charged for the calls and their privacy was improperly invaded. Furthermore, the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear.

78.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

80.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

81.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**TCPA Prerecorded Voice Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation up to the date of class certification, (2) received one or more calls on their cellular telephone or any other protected telephone service, (3) from or on behalf of Defendant, (4) that used a pre-recorded message.

**TCPA National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a ny12-month period; (4) within the four years prior to the filing of the Complaint and up to the date of class certification.

**TCPA Internal Do Not Call Class:** All persons within the United States to whom within the four years prior to the filing of the Complaint within the four years prior to the filing of the Complaint and up to the date of class certification: (1) Defendant (or a third-party acting on behalf of Defendant) (2) sent two or more telemarketing calls in any 12-month period, (3) after they previously asked for the calls to stop.

**FTSA Autodial Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone phone call (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or services (4) that was sent using the same equipment or type of equipment utilized to call Plaintiff, (5) and who did not give prior express written consent to receive such calls.

**FTSA Prerecorded Voice Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone phone call, (2) by or on behalf of Defendant, (3) regarding Defendant's property, goods, and/or services, (4) that played a recorded message, (5) and who did not give prior express written consent to receive such calls.

**FTSA Internal Do Not Call Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant, (3) regarding Defendant's property, goods, and/or services, (4) after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant.

82.     Plaintiff reserves the right to expand or narrow the definitions of the Classes following discovery.

83.     Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

84.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

85.     This Class Action Complaint seeks injunctive relief and money damages.

86.     The Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

87.     ***Numerosity.*** The members of the Class are so numerous that individual joinder is impracticable. Plaintiff cannot know the exact number of Class members affected by Defendant's

conduct, but based on the general nature of telemarketing campaigns, Plaintiff believes, and therefore alleges upon information and belief, that each Class includes, at a minimum, at least 40 members. The members of the Class are ascertainable because they are defined by reference to objective criteria. The exact number and identities of the Class members are unknown at this time but can be ascertained through discovery as Defendant maintains internal records that can be used to identify each member of the Class, such that identification of the Class members is a matter capable of ministerial determination from Defendant's records.

88.     ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

> a.   Whether Defendant placed telephone calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA;
>
> b.   Whether Defendant placed telephone calls to the cellular phones of Plaintiff and the Class using an artificial or prerecorded voice;
>
> c.   Whether Defendant placed telephone calls to Plaintiff and the Class using a prerecorded message;
>
> d.   Whether Defendant placed telephone calls to telephone numbers registered on the National DNC Registry;
>
> e.   Whether Defendant initiated telemarketing calls without instituting the "minimum standards" for procedures for maintaining a list of persons who request not to receive such calls;

f.  Whether Defendant called Plaintiff and the Class members after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant;

g.  Whether Defendant's telephone calls introduced an advertisement;

h.  Whether Defendant's telephone calls constitute "telephone solicitations" under the TCPA;

i.  Whether Defendant's telephone calls constitute "telemarketing" under the TCPA;

j.  Whether Defendant's telephone calls constitute "telephonic sales calls" under the FTSA;

k.  Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to Plaintiff and the Class using automated means;

l.  Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to Plaintiff and the Class using an artificial or prerecorded voice;

m.  Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to telephone numbers listed on the National DNC Registry;

n.  Whether Defendant acted knowingly or willfully in placing the unlawful calls at issue;

o.  Whether Defendant is liable to Plaintiff and the Class for statutory damages and/or liquidated damages, and the amount of such damages; and

p.  Whether Defendant should be enjoined from engaging in such conduct in the future.

89.     *Typicality.* Plaintiff's claims are typical of the claims of each member of the Class because they are based on the same factual and legal theories, Plaintiff and the Class members were harmed by Defendant in the same way, and Plaintiff is not subject to any unique defenses.

90.     *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and TCPA litigation specifically, and Plaintiff intends to vigorously prosecute this action. Plaintiff also has no interests that are antagonistic to those of the members of the Class.

91.     *Superiority.* A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Class amount to millions of dollars, the amount of individual damages available to each member of the Class as a result of Defendant's violations of law alleged herein does not warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

92.     Further, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

16

## **FIRST CAUSE OF ACTION**

### **Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
### **(On Behalf of Plaintiff and the TCPA Prerecorded Voice Class)**

93.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

94.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using…an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

95.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf—placed telephone calls to the cellular telephone numbers of Plaintiff and the Class using an artificial or prerecorded voice.

96.     When Plaintiff listened to the voicemails, he was easily able to determine that it was a prerecorded message. See Rahn, 2016 U.S. Dist. LEXIS 186171, at *10-11 ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

97.     Moreover, Defendant's calls and voicemails were clearly prerecorded because (1) the voice was robotic and monotone; (2) the artificial voice asked Plaintiff a series of questions that solicited a response by pressing the keypad; and (3) there was a delay before the prerecorded message started playing.

98.     Defendant did not have prior express written consent to place telephone calls to Plaintiff and the Class using an artificial or prerecorded voice.

99.     Defendant, therefore, violated Section 227(b)(1)(A)(iii).

100.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

101.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

102.     Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

103.     Because Defendant knew or should have known that it was placing calls using an artificial or prerecorded voice without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

104.     Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the DNC Registry Class)

105.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Count, as though fully set forth herein.

106.     The TCPA established a National DNC Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014. 61.

107.     The TCPA's implementing regulations adopted by the FCC provide that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who

do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

108.    A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(c)]." 47 U.S.C. § 227(c)(5).

109.    Defendant violated Section 64.1200(c) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to the residential telephone lines of Plaintiff and the Class members while their telephone numbers were registered on the National DNC Registry.

110.    Defendant's telephone calls to Plaintiff and the Class members constitute "telephone solicitations" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

111.    Defendant did not have prior express written consent to initiate telephone solicitations to Plaintiff and the Class while their numbers were registered on the National DNC Registry.

112.    Defendant did not have prior express invitation or permission to initiate telephone solicitations to Plaintiff and the Class while their numbers were registered on the National DNC Registry.

113.    Defendant did not have an established business relationship with Plaintiff or the Class.

114.    As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

115.    Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(c)(5)(A).

116.    Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(c)(5)(B).

117.    Because Defendant knew or should have known that it was initiating telephone solicitations to numbers on the National DNC Registry without the requisite level of consent, Defendant's violations of the TCPA were willful or knowing.

118.    Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

### THIRD CAUSE OF ACTION

**Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the TCPA Internal DNC Class)**

119.    Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

120.    The TCPA's implementing regulations adopted by the FCC prohibit telemarketers from initiating any call for telemarketing purposes unless they institute certain procedures to ensure do-not-call requests are honored:

> No person or entity shall ***initiate…any call for telemarketing purposes*** to a residential telephone subscriber ***unless*** such person or entity has ***instituted procedures for maintaining a list of persons who request not to receive such calls*** made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

121.    Section 64.1200(d) requires that "[t]he procedures instituted *must meet* the

following *minimum standards*:"

(1)  *Written policy*. Persons or entities making…calls for telemarketing purposes *must have a written policy*, *available upon demand*, for maintaining a do-not-call list.

(2)  *Training of personnel*. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)  *Recording, disclosure of do-not-call requests*. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity *must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list* at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) *must honor a residential subscriber's do-not-call request within a reasonable time* from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

                    *              *              *

(6) *Maintenance of do-not-call lists.* A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(6) (emphasis added).

122.    A violation of Section 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5),

which grants a private right of action to any "person who has received more than one telephone

call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(d)]." 47 U.S.C. § 227(c)(5).

123.    Defendant violated Section 64.1200(d) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

124.    Specifically, Defendant placed two or more calls to Plaintiff and the Class on their residential line for telemarketing purposes.

125.    Defendant's calls to Plaintiff and the Class constitute "telemarketing" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(13).

126.    When Plaintiff and the Class received telemarketing calls by Defendant or on its behalf, they made repeated "do-not-call" requests.

127.    Defendant failed to "honor [Plaintiff's and the Class members'] do-not-call request within a reasonable time" and continued to place telemarketing calls to Plaintiff and the Class.

128.    Given the capabilities of modern telemarketing tools and technology, Defendant has the capability of immediately complying with do-not-call request. Thus, by failing to immediately record and honor Plaintiff's do-not-call request and continuing to initiate multiple telemarketing calls to Plaintiff even four days after his request, Defendant failed to honor his do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc*., No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024) ("Because the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request,' at this stage of the dispute, the Court must infer

that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

129.    By failing to "honor a residential subscriber's do-not-call request within a reasonable time," Defendant failed to meet the required "minimum standard" of Section 64.1200(d)(3).

130.    Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant also does not meet the other "minimum standards" for the required "procedures for maintaining a list of persons who request not to receive" telemarketing. Specifically, it suggests that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) does not "record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

131.    Because Defendant does not meet the "minimum standards" of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] any call for telemarketing purposes," regardless of whether the recipient made a do-not-call request. 47 C.F.R. § 64.1200(d) (emphasis added).

132.    As a result of Defendant's violations of the TCPA, Plaintiff and the other members of the TCPA Class were harmed.

133.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. *See* 47 U.S.C. § 227(c)(5)(A).

134.     Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(B).

135.     Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without instituting the "minimum standards" for the "procedures for maintaining a list of persons who request not to receive such calls" required by Section 64.1200(d), Defendant's violations of the TCPA were willful or knowing.

136.     Thus, Plaintiff and the Class members are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(C).

## FOURTH CAUSE OF ACTION

### Violation of the FTSA, Fla. Stat. § 501.059(8)(a)
### (On Behalf of Plaintiff and the FTSA Autodialer Class)

137.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

138.     The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection or dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

139.     Defendant made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection or dialing of telephone numbers.

140.     Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(8)(a)(1)(j).

141.     The following facts strongly suggest that Defendant used an automated system for the selection or dialing of telephone numbers to place the calls at issue to Plaintiff and the Class: (1) Plaintiff never provided Defendant with his telephone phone number; (2) Plaintiff has no established business relationship with Defendant; and (3) the content of Defendant's calls were generic obviously designed for *en masse* transmission.

142.     Defendant placed the telephone calls to Plaintiff and the Class who received such calls while located in Florida.

143.     Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

144.     Thus, Defendant's telephone calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

145.     Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

146.     Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. See Fla. Stat. § 501.059(10)(a)(1).

147.     Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

148.     Because Defendant knew or should have known that it was using an automated system for the selection and dialing of telephone numbers to place telephone calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

149.     Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each telephone call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

150.     Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover his reasonable attorney fees and costs from the Defendant.

### FIFTH CAUSE OF ACTION

**Violation of the FTSA, Fla. Stat. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Prerecorded Voice Class)**

151.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

152.     The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves…the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

153.     Defendant made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class that involved the playing of a recorded message when a connection is completed.

154.     Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(8)(a)(1)(j).

155.    Defendant placed the telephone calls to Plaintiff and the Class who received such calls while located in Florida.

156.    Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class a prerecorded message, as required by Section 501.059(8)(a).

157.    Thus, Defendant's telephone calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

158.    Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

159.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

160.    Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

161.    Because Defendant knew or should have known that it was using a prerecorded message to place telephone calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

162.    Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each telephone call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

163.    Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover his reasonable attorney fees and costs from the Defendant.

## SIXTH CAUSE OF ACTION

**Violations of the FTSA, Fla. Stat. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA Internal DNC Class)**

164.    Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

165.    It is a violation of the FTSA for a "telephone solicitor or other person" to "initiate an outbound telephone call…or voicemail transmission to a consumer…who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call…or voicemail transmission…made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

166.    Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

167.    In addition, and/or in the alternative, Defendant is, and at all times relevant was, an "other person."

168.    Defendant—or third-parties acting on Defendant's behalf—initiated outbound telephone calls to Plaintiff and the Class.

169.    Defendant initiated outbound telephone calls to Plaintiff and the Class who received such calls while located in Florida.

170.    Plaintiff and the Class members communicated to Defendant that they do not wish to receive an outbound telephone call or voicemail transmission made by or on behalf of Defendant.

171.    Defendant continued to initiate outbound telephone calls to Plaintiff and the Class after their request to not receive an outbound telephone call or voicemail transmission made by or on behalf of Defendant.

172.     Thus, Defendant violated Section 501.059(5) of the FTSA.

173.     Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

174.     Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

175.     Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

176.     Because Defendant knew or should have known that it was initiating outbound telephone calls to consumers who has previously communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant, Defendant's violations of the FTSA were willful or knowing.

177.     Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each call that Defendant placed in willful or knowing violation of the FTSA. Fla. Stat. § 501.059(10)(b).

178.     Under Fla. Stat. § 501.059(11)(a), Plaintiff is entitled to recover his reasonable attorney fees and costs from the Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a

proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

      B.     Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

      C.     Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

      D.     That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

      E.     That the Court enter a judgment awarding Plaintiff and all Class members liquidated damages of $500 for each violation of the FTSA and $1,500 for each knowing or willful violation;

      F.     That the Court enter awarding pre- and post-judgment interest to Plaintiff and the Classes;

      G.     That the Court enter awarding the reasonable attorneys' fees and the costs of this action to Plaintiff and the Classes; and

      H.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemizations associated with the allegations herein, including all records, lists, electronic databases, or other itemizations in the possession of any vendors,

individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: April 2, 2025

Respectfully submitted,

**GOLD LAW, P.A.**

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*